## CHARLES B. STARK, Appellant, v. ELIZABETH P. COOPER, Respondent.

Springfield Court of Appeals, December 6, 1919.

1. **PLEADING: Motion to Make Answer More Definite Waived by Going to Trial.** Error in denying a motion to require an answer to be made more definite and certain is waived by going to trial..

2. ———: **Answer Admitting Adverse Claims Does not Admit All Facts of Complaint.** In action to determine adverse claims, where defendant admitted claiming an interest in the land, and then generally denied allegations of bill, plaintiff is not entitled to judgment on the answer as a general denial of the allegation that she claims an adverse interest.

3. **MORTGAGES: Withholding From Record Not Fraud as to Prior Creditors.** The withholding from record by agreement, for several years, of deeds given to secure loans to owner, is not such fraud against a prior creditor of owner as will preclude grantee from claiming her lien on the land, though the situtation would be different as to subsequent creditors.

4. ———: **Evidence Sufficient That Deeds Were Valid Mortgages.** evidence *held* to establish that deeds were in fact mortgages given to secure unpaid indebtedness owning by the grantor.

5. **EQUITY:** Mortgage Liens not Lost by Merger Where Adverse Party Seeks Title in Equity. Under the maxim, "He, who seeks equity, must do equity," plaintiff, in action to determine adverse claims against grantee of deeds given to secure indebtedness, cannot claim that defendant's mortgage lien was lost by merger in judgment in which other items of indebtedness were recovered, but must in equity discharge such lien by payment to procure title.

6. **APPEAL AND ERROR:** Judgment Modified to Remove Burdensome Conditions. In action to determine adverse claims, where plaintiff is required to discharge the mortgage lien for indebtedness claimed by defendant and secured by deeds, as a condition to clear title, a judgment requiring legal tender of the amount in consideration of a quitclaim deed, compliance with which on account of non-residence of defendant would be burdensome and expensive to plaintiff, and might cause further litigation in case of refusal to execute quitclaim, will be remanded for modification, that decree may quiet title upon payment into court of amount involved.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Chas. B. Stark* and *McGee & Bennett* for appellant.

*Walter C. Guels* and *Wm. P. Elmer* for respondent.

FARRINGTON, J.—This is an action brought by the plaintiff to acquire the title to two tracts of land in Dent County, Missouri. The petition is in two counts, which are the same except in the description of the different tracts of land. Plaintiff avers that he is the owner of the land in fee simple, and claims title to it, and that defendant claims some title, estate or interest in and to the premises, the character of which is unknown to plaintiff except that it is adverse and prejudicial to his interest. His prayer asks that the court define and adjudge the title and interest of the parties and to determine all rights, claims, interest, liens and demands whatsoever between the parties, and that there be awarded full and complete relief, whether legal or equitable, and for general relief.

The defendant answered each count, admitting that she claimed an interest in the premises described, and then generally denied the allegations of plaintiff bill.

Plaintiff filed a motion asking that her answer be made more definite and certain, which being overruled the cause went for trial, and it will not be out of place to dispose of one contention made by appellant here. The law is too well settled to require a citation of authorities that where a motion filed merely to make a pleading more definite and certain is overruled and the parties go to trial, the motion is waived.

The facts in the record disclose that the common source of title to this land was in one Erasmus McGinnis, and that the plaintiff obtained a judgment against McGinnis on December 6, 1917, for $23,220. That two days after that time he filed in Dent County, the place where the land in suit is located, a transcript of his judgment, and that on September 3, 1918, he sued out an execution on said judgment. A levy was made on September 10th, and the Sheriff duly advertised the land for sale and plaintiff became the purchaser on November 26, 1918, at the Sheriff's sale. The defendant introduced two general warranty deeds, both executed by McGinnis to one Porter. The defendant is a devisee of said Porter, who was then deceased. The consideration in the deeds was one dollar and other good and valuable considerations. One of these deeds was dated Feb. 19, 1914, and the other Dec. 21, 1915, both of which deeds were by agreement of the parties thereto withheld from record until October 9, 1918, after the Sheriff had levied on the lands and advertised the same for sale but prior to the date of the Sheriff's sale at which plaintiff became the other deed the sum of $700, and that the deeds were given as security for the payment of those respective sums. The deeds, while being absolute general warranty deeds in form, were conditional deeds or were purchaser. The testimony showed that McGinnis, at the time one of the deeds was executed, had borrowed of Porter $550, and at the time of the execution of the

equitable mortgages. The defendant, executrix, inventoried those several sums including the notes for the sum of $550 and $700, and recited that said notes were secured by deeds but that the deeds not recorded. The inventory was filed on October 23, 1916. The defendant knew the deeds had not been recorded, and there is some testimony that she had an agreement with McGinnis not to record them until McGinnis gave his consent thereto. The evidence further shows that on May 16, 1917, defendant filed a suit against McGinnis, declaring on five notes executed by him and among them were the two notes of $550 and $700, to secure which, the two deeds had been given. McGinnis signed a stipulation that the total amount due on said five notes was $7642.44, and judgment was rendered therefor on November 30, 1917, and the indebtedness which had therefore been evidenced by five promissory notes, two of which were secured by the deeds heretofore referred to, were secured by the deeds heretofore referred to, was, was, on the rendition of this judgment, evidenced by the judgment for the total or gross sum. An execution was issued on this judgment and delivered to the Sheriff of Dent County on December 13, 1917, which was five days after the transcript on plaintiff's judgment had been filed in that county. A levy was made and the land advertised, but before the date set for the sale the defendant discharged the levy and recalled the execution. The execution ran for the total amount of defendant's judgment against McGinnis, that is $7642.44.

From the evidence it further appears that on May 12, 1910, McGinnis had given to plaintiff his note for $18,500, secured by a deed of trust on some property in Denver. Default in the interest was made in 1913, and plaintiff began to press McGinnis for payment of the principal. A note was given by McGinnis to plaintiff for past due interest. There is testimony that the plaintiff was told by McGinnis that he owned this Denty County land free and unincumbered, but there

is no proof that the defendant nor Porter, under whom he claims, knew that McGinnis was misrepresenting the fact, and there is no proof in the case that after the two deeds given to Porter, which were in fact mort-. gages, there was any moned advanced by the plaintiff to McGinnis. In other words, the plaintiff is not an intervening creditor of McGinnis; his debt existed, as did the defendant's debt, prior to the execution of the two deeds which were by agreement merely equitable mortgages. The court found that the failure to record the deeds from McGinnis to Porter was not from any fraudulant intent by either party, and that the plaintiff holds title to the land mentioned in both counts of the petition subject to the two deeds held to be mortgages, upon which is due the defendant on the first count $596.70 and on the second count $759.68. A judgment was entered vesting title to the land in the plaintiff subject to said deeds.

The first point made by the appellant is that a judgment should have been entered by the court on the answer of defendant, she having made a general denial to plaintiff's allegation that she claimed some interest prejudicial or adverse to plaintiff's interest in the land, citing as an authority for her position the case of Gilchrist v. Bryant, 213 Mo. 442, 111. S. W. 1128. The facts in the case at bar are different from those in the Gilchrist case, in that the defendant here asserts a claim, interest or right in the land, whereas in the Gilrichrist case the defendant disclaimed and right.

Appellant further alleges that the agreement to withhold these deeds, which were in fact mortgages, from record for several years was in law a fraud such as would preclude any rights of the defendant whatever thereunder, citing the case of Bank v. Buck, 123 Mo. 141, 27 S. W. 341. This case is wholly inapplicable here. What is said there with reference to withholding deeds for several years was applicable only to transactions between the record owner of the land and

subsequent creditors. The plaintiff here was a creditor of McGinnis, the grantor, prior to the execution of the deeds in question. The same can be said of the cases of Bank v. Doran, 109 Mo. 40. 18 S. W. 836, and State Bank of St. Louis v. Frame, et. al., 112 Mo. 502 , 20 S. W. 620, cited by appellant.

It is held in the case of Bank v. Newkirk, 144 Mo. 473, 46 S. W. 606, that to withhold a deed or mortgage from record is not presumptive or fraud; and in Wall v. Beedy, 161 Mo. 625, 61 S. W. 864, that the burden is on the creditor to show that failure to record was a participation in a fraudulent intent, and to further show that the credit extended was done in reliance on unincumbered title. [Clark v .Lewis, 215 Mo. 173, 114 S. W. 604; Sugg v. Duncan, 238 Mo. 422, 142 S. W. 321.]

The principal contention made by appellant is, that the defendant having consolidated in one suit the two notes, secured by these two equitable mortgages, together with three other notes and having obtained a judgment for the total amount, thereby merged all of such indebtedness into one judgment and thereby waived and right, claim or lien which she might have had by virtue of these two equitable mortgages, citing the following cases which hold that when a judgment is rendered for the indebtedness evidenced by a note it all becomes merged in the judgment and the note extinguished. [Cowgill v. Robberson, 75 Mo. App. 412; Winham v. Kline, 77 Mo. App. 36; Tourville v. Wabash R. R. Co., 148 Mo. 614, 50 S. W. 300; Rice, Stix v. McClure & Harper, 74 Mo. App. 379.] A number of other citation are given, where it is held that the note has lost its force and effect and that it is drowned in the judgment. Other authorities are cited holding that the finding by the court or jury of the amount owing on a note is not a part of the judgment and will not save the note from the effect of the merger, and that the same is true where a judgment is rendered on a stipulation. He also contends

ment of indebtedness in these common-law mortgages, nor any promise to pay contained within the mortgages, that the action of the defendant in suing on the notes and consolidating that indebtedness with other lost to the defendant the right to pursue a foreclosure remedy.

Respondent replies to plaintiff, citing us to the following cases which hold that merger of a claim in a judgment merely means that evidence of the claim is found in the judgment, and that a mortgagee has the right to obtain a judgment on the note and on failure to collect may then enforce his mortgage. [Thornton v. Pigg, 24 Mo. 249; Kansas City Savings Ass'n v. Mastin, 61 Mo. 435; Bush v. Block, et al., 193 Mo. App. l. c. 709, 187 S. W. 153, and cases therein cited.]

While in none of the cases cited by appellant or respondent do the fact coincide entirely with the facts of the case here, we note that Judge SHERWOOD, speaking in the case of Kansas City Savings Ass'n v. Mastin, 61 Mo. l. c. 438, said:

"I have searched the record in vain in the endeavor to discover anything indicative of a waiver of their mortgage lien on the part of the plaintiffs. No doubt there are cases of that sort, but in all of them, as in that of Anderson v. Bumgartner (27 Mo. 80) cited by defendants, there must exist the element of equitable estoppel—something in short which forbids the assignee from asserting his lien against innocent purchasers, misled by his representations, or by his failure to speak when he should have done so."

If this rule which we quote is the law, then it would require in this case some action of the defendant which would estop her from asserting her claim now. Certainly the mere merging it into a judgment in which was merged other indebtedness of the same debtor could not be held to have misled the plaintiff here or to have misrepresented to him any of the conditions that existed.

The only case cited by either side where a note secured by mortgage had been merged in a judgment

with other indebtedness is that of Freeburg v. Eksell, 123 Iowa, 464, 99 N. W. 118, where it is held that where the amount secured by the mortgage can be distinguished, the lien will not be waived.

We are not, however, inclined to believe that this case rides off on any question of merger. It being an equity case, in our opinion is to be determined upon that broad ground which enters into all equity suits, formulated in the maxim, "He who comes into equity must do equity." Here we have a case where a plaintiff comes into a court of equity asserting title to land, and asking that the legal title be divested out of the defendant because of the fact that certain deeds, absolute on their face, that had been made to the defendant were in fact only conditional deeds or equitable mortgages. The finding of the trial court was clearly sustained by the evidence that the defendant was the holder of unpaid indebtedness owing by McGinnis, through whom plaintiff claims title, secured by the equitable mortgages given to and held by the defendant. We are not dealing with a case where that defendant is coming into court asking to have her mortgages foreclosed, or asking any affirmative relief whatever. The plaintiff is the one that gave the equity court jurisdiction of this case, and when he opens that door he must be willing, if he obtains equity, to do all things that equity and good consequence and good moral would dicate. Now, if it is a fact that these deeds were mortgages, and we concur in such finding made by the trial judge, and the indebtedness secured thereby had not been paid, then the only ground upon which the plaintiff can seek to have the legal title divested out of the defendant and given him absolutely, is that through some action of the defendant by placing her indebtedess in the form of a judgment she has lost her right to a lien on this property. There is no evidence of fraud, in fact, or of misrepresentation, or that plaintiff's debt was extended under a false credit. It is the plaintiff that is invoking the aid of a court of equity and not the

defendant, who already has the legal title to this land, given her or to her grantor or testator as security for the debt. If let alone she has all, or as much at any rate, as was contemplated between Porter and McGinnis; so then, we say if she is to be divested of this legal title by the plaintiff, the plaintiff must be. willing to do equity by her if he expects the aid of the court in establishing his right to the land.

Pomeroy, in his work on Equity Jurisprudence, 3rd Edition, Vol. 1, sec. 385, page 637, lays down the following rule in discussing this principle of law: "The meaning is, that whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy demanded, the court will not confer its equitable relief upon the party seeking its interposition and aid, unless he has acknowledged and conceded, or will admit and provide for, all the equitable rights, claims, and demand justly belonging to the adversary party, and growing out of or necssarily involved in the subject-matter of the controversy."

The same author also holds that a defendant may get equitable relief in a cause where a court of equity would not give him relief if he were the plaintiff and were asking affirmative relief. See same author, section 386, page 641,. in which cases are cited where cancellation of a usurious instrument is asked, upon which instrument the holder thereof could maintain no suit, yet, before a court of equity will cancel the instrument at the instance of a plaintiff, he must repay the holder of such instrument the amount of money originally loaned. And under section 392, same author, it is held that the rule extends to all cases where a party seeks to have a contract set aside and cancelled on the ground of its illegality in violating the provisions of the statute. The court will always require as a condition on granting the relief that he pay what is legally due under the. agreement, unless the illegality is a *malum in se.*

It was held in the case of Reed v. Tyler, 56 Ill. 288, that an invalid tax deed of the plaintiff's land will be

set aside as a cloud upon plaintiff's title, only upon condition that he refund all the taxes which had been advanced or paid by the parties to whom the deed was given. It has been held that equity will require the payment of a petitioner to the defendant where the plaintiff is seeking equitable relief even though the debt may have been barred by the Statute of Limitation. [See Railroad v. Gurley, 47 S. W. 513; See, also, De Walsh v. Braman, 43 N. E. 597; 10 R. C. L., sec. 141; 16 Cyc., pages 140, 141, 143.]

This, after the facts are developed, is nothing more than a suit by the owner of land to have certain deeds, absolute in form but conditional in fact, declared mortgages, the very nature of which suit would require that the owner ask that the absolute deeds be declared mortgages, and offer to pay off the indebtedenss which the deeds secured. The defendant has not indicated that on a payment of the debt she will refuse to make conveyance that will take the title out of her. A quit-claim deed from the defendant, when the amount of the mortgage is paid, is all that plaintiff is entitled to, and will doubtless be executed on the payment of the debt.

We, therefore, hold that it appearing from the facts of this case that the defendant here held the legal title to the land to secure the indebtedness of the two notes given by plaintiff's grantor, which notes were unpaid, and it further appearing that her action in consolidating these notes in a judgment with other indebtedness in no way misled or deprived plaintiff of any right that he had, the plaintiff, in order to divest the legal title out of defendant and place it in himself, must in equity and good conscience return to the defendant that with which she or her grantor or testator parted on procuring the title, and this is the effect of the judgment that the trial court rendered in the cause. It meets with our approval and is affirmed. *Sturgis, P. J.,* and *Bradley, J.,* concur.

## ON MOTION TO MODIFY JUDGMENT.

FARRINGTON, J.—The appellant has filed a motion in this court asking that our opinion be so modified as to require that the cause be remanded to the trial court to enter a judgment in defendant's favor in accordance with the judgment heretofore rendered in the circuit court and affirmed by this court, with the additional amendment thereto that on the payment by plaintiff to the clerk of the circuit court of the amount found to be due the defendant as a charge against the land in suit less the costs which were charged against the defendant, the lands described in' the pleading and the judgment to be fully discharged of all mortgages, claims or liens held by the defendant, and the plaintiff's title to said land to be declared free, clear, complete and perfect as against any such claims of the defendant.

It is pointed out in the motion, and was shown in the record before us, that the defendant is a non-resident of the State of Missouri, and that to require a legal tender of the amount due in consideration of a quit-claim deed from defendant would be burdensome and expensive to plaintiff, and in case of a refusal of defendant to execute a quit-claim deed would require further litigation. We have concluded that in view of the fact that all the defendant is entitled to is the payment of the indebtedness due her under her mortgage deeds less the costs heretofore taxed against her in the judgment rendered in the circuit court. We therefore, remand the cause to the circuit court with instructions to re-enter the judgment in this cause thereby adjudging to defendant that she is entitled to the amount of her indebtedness secured by said deeds, less her part of the costs as contained in the judgment heretofore rendered, and further order that on the payment by plaintiff of such amount to the clerk of· the circuit court all of the liens, claims or equitable rights claimed under said deeds be declared fully paid and discharged, and on such payment to the clerk by the plaintiff the lands described

in the pleadings and judgment be declared free and clear from any and all claims or liens in favor of the defendant growing out of said mortgage deeds.

The costs of this appeal are adjudged against plaintiff. *Sturgis, P. J.*, and *Bradley, J.*, concur.